IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF IOWA
CENTRAL DIVISION

| | |
|---|---|
| MARION ALEXANDER BROOKS, | Case No. 4:10-cv-00591-JEG-CFB |
| Plaintiff, | |
| vs. | REPORT AND RECOMMENDATION ON DEFENDANTS' MOTION FOR |
| JOHN AULT, LISA SHELFORD, MARK LOHMAN, PAUL DOHMAN, RICH TYLER, DR. FILLIPELLI, PAM MILLER, DARRELL MOELLER, and ROY GEHLE, | SUMMARY JUDGMENT |
| Defendants. | |

This matter comes before the Court on Defendants' Motion for Summary Judgment (Clerk's No. 46) filed June 29, 2012. Plaintiff Marion Alexander Brooks, an inmate formerly housed at Iowa State Penitentiary (ISP), Fort Madison, Iowa, brings this 42 U.S.C. § 1983 action, claiming a violation of his Eighth Amendment rights in connection with injuries he sustained from an electrical shock caused by an exposed wire in an ISP shower on February 27, 2009. Brooks seeks $100,000 in compensatory damages, $250,000 in punitive damages, and injunctive relief. On February 27, 2009, Defendant John Ault was the Warden at the Fort Madison penitentiary, Defendant Darrell Moeller was the Unit Manager of Cellhouse 219, Defendant Roy Gehle was a Lieutenant working in Cellhouse 219, Defendant Pam Miller was a Correctional Officer working in Cellhouse 219, Defendants Mark Lohman and Paul Dohman were maintenance electricians working for ISP in Fort Madison, and Defendant Lisa Shelford was a nurse working for ISP in Fort Madison. The Complaint was filed on December 13, 2010 (Clerk's No. 1), and an Amended Complaint was filed on January 4, 2011. (Clerk's No. 4.)

1

Service of process was returned as undeliverable on February 3, 2011, for Defendants Rich Tyler (Clerk's No. 8) and Dr. Fillipelli (Clerk's No. 7). The Iowa Attorney General filed a Notice of Non-Appearance for Tyler (Clerk's No. 12) and Dr. Fillipelli (Clerk's No. 11) on March 8, 2011. Because they were not served within 120 days after the Complaint was filed, and Plaintiff had notice that they were not served or represented, it is respectfully recommended that Defendants Tyler and Dr. Fillipelli[1] be dismissed without prejudice pursuant to Fed. R. Civ. P. 4(m).

On June 1, 2012, Plaintiff's counsel was permitted to withdraw from this case (Clerk's No. 44). Plaintiff filed a Motion for Appointment of Counsel (Clerk's No. 48) on July 16, 2012, which was denied in an Order (Clerk's No. 49) filed July 20, 2012. Plaintiff was granted an extension of time from July 31, 2012, to August 17, 2012, to respond to Defendants' Motion for Summary Judgment. On August 22, 2012, Brooks filed a response. (Clerk's No. 50.) Defendants filed a Reply (Clerk's No. 53) on August 28, 2012, and a Supplemental Reply (Clerk's No. 54) on August 30, 2012. Although not timely filed, the Court will consider Plaintiff's Response to Defendants' Motion for Summary Judgment.

This case was referred to the undersigned on September 21, 2011, for a Report and Recommendation under 28 U.S.C. § 636(b)(1)(B). The matter is fully submitted. After carefully considering the record, the Court finds and recommends as follows on the issues presented.

## I. STANDARD FOR SUMMARY JUDGMENT

Summary Judgment is appropriate when the facts viewed in the light most favorable to the non-moving party fail to establish a genuine issue of material fact, and the moving party is entitled to judgment as a matter of law. *Lykken v. Brady*, 622 F.3d 925, 929 (8th Cir. 2010); *Meuir v. Greene Cnty. Jail Emples.*, 487 F.3d 1115, 1118 (8th Cir. 2007). The moving party

---

[1] On February 17, 2011, Brooks filed a Motion to Amend/Correct Defendants (Clerk's No. 9), stating that there was a mistake, and the allegations he made against Dr. Fillipelli were meant to be made against Dr. Stephen Sparks. On February 22, 2011, the Court denied Brooks' motion to amend, with permission to renew the motion. (Clerk's No. 10.) The motion to amend was not renewed. Even if Dr. Fillipelli had been properly served, Brooks admitted that he has no cause of action against this doctor. Dr. Stephen Sparks was dismissed as a defendant in the Court's Initial Review Order (Clerk's No. 5), and never served in this action.

bears the initial burden of proving that the case lacks a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). The burden is then on the non-moving party to show sufficient evidence to establish every essential element of the party's case, and on which the party will bear the burden of proof at trial. Fed. R. Civ. P. 56(c); *Celotex*, 477 U.S. at 322-23. The resisting party must "go beyond the pleadings and by affidavits, depositions, answers to interrogatories, and admissions on file, designate specific facts showing that there is a genuine issue of material fact." *Rouse v. Benson*, 193 F.3d 936, 939 (8th Cir. 1999); *see Glorvigen v. Cirrus Design Corp.*, 581 F.3d 737, 743 (8th Cir. 2009). According to LR 56.b, "failure to respond, with appropriate citations to the appendix, to an individual statement of material fact constitutes an admission of that fact." LR 56.b.

## II. FINDINGS OF FACT

The following facts are those viewed in the light most favorable to Brooks, the non-moving party.

Brooks was committed to the custody of the Iowa Department of Corrections on September 15, 2008, and continues to serve a ten-year sentence. Brooks is currently incarcerated at the Iowa Medical and Classification Center. From November 24, 2008, to April 29, 2009, Brooks was incarcerated in ISP, Fort Madison, Iowa and housed in Cellhouse 219. The shower facilities on the fourth floor of Cellhouse 219 had individual shower stalls. Each stall had a light fixture above the shower nozzle. The light fixtures in the showers of Cellhouse 219 were in poor condition, and were removed in February 2009.

On February 27, 2009, while using a shower stall on the fourth floor of Cellhouse 219, Brooks received an electrical shock when his hand came into contact with an exposed wire where the light fixture had been. After receiving the electrical shock, Brooks fell to his knees, causing his face and shoulder to hit the shower wall. Brooks reported the incident to Miller. Prison staff then immediately closed the showers. Tim Smith, an inmate electrician, was called; Smith discovered live wires in the light fixture receptacle in the shower where Brooks received the electrical shock. The showers were closed until maintenance workers fixed the problem. Prior to Brooks' complaint, no one at ISP had received any reports of inmates suffering from electrical shocks in Cellhouse 219 showers.

Nurse Shelford treated Brooks on February 27, 2009.  At that time, Brooks complained of pain in his neck and shoulder.  Brooks' subjective complaint recorded on the Health Services report was: "today when I was in the shower washing my hair I felt my hand brush something and the next thing I know I got shocked.  I think I'm okay but my shoulder and neck are bothering me." (Defs.' App., Ex. I at 3.)  Nurse Shelford determined Brooks had tenderness on the back of his right shoulder, but he had full range of motion of his shoulders and neck.  Nurse Shelford examined Brooks, and discovered no electrical burns.  Nurse Shelford consulted a physician, who recommended that Brooks alternate ice and warm compresses on his right shoulder, take acetaminophen (Tylenol) for pain, and limit activity.  Brooks was given Tylenol.

Nurse Shelford also treated Brooks three days later on March 2, 2009.  Brooks complained that he was getting headaches, the pain and stiffness in his neck and right shoulder was worse, and the Tylenol was not working.  Nurse Shelford consulted with Dr. Stephen Sparks, who ordered a three-day supply of the pain medication Tramadol.  Nurse Shelford scheduled Brooks to see the physician on the following day, March 3, 2009, with a priority designation of "high." (Defs.' App., Ex. I at 5-6.)  Tramadol is a central acting painkiller used to manage "moderate to moderately severe pain in adults." *Tramadol Concise Monograph*, Physicians' Desk Reference, PDR.net, http://www.pdr.net/drugpages/concisemonograph.aspx?concise=3207 (last visited Sept. 20, 2012).  At the time Dr. Sparks examined Brooks on March 3, 2009, Brooks had not yet received a dose of Tramadol.  (*Id*., Ex. I at 7.)  Dr. Sparks provided Brooks with a sling for his right arm on March 3, 2009.  The record does not specify when Brooks received Tramadol or other pain medication.

## III.  DISCUSSION

The Eighth Amendment prohibits the infliction of "cruel and unusual punishments."  U.S. Const. amend. VIII.  A prison official may be held liable under the Eighth Amendment for acting with deliberate indifference to an inmate's health or safety only if the prison official is aware of a substantial risk of serious harm to the inmate, and disregards that risk by failing to take reasonable measures to abate it.  *See Farmer v. Brennan*, 511 U.S. 825, 832 (1994).  Both

elements are required, and the absence of either will prevent the finding of an Eighth Amendment violation. *Id.* at 834.

> A. <u>Conditions of Confinement Claim against Ault, Moeller, Gehle, Miller, Lohman, and Dohman</u>

Brooks claims Ault, Moeller, Gehle, Miller, Lohman, and Dohman failed to ensure that the ISP showers were safe, in violation of his Eighth Amendment rights. "The Eighth Amendment standard for conditions of confinement is whether the defendants acted with deliberate indifference." *Reynolds v. Dormire*, 636 F.3d 976, 979 (8th Cir. 2011) (internal citations omitted). A prison official acts with deliberate indifference if he "'knows of and disregards' a substantial risk of serious harm to an inmate." *Id.* (quoting *Farmer*, 511 U.S. at 837). A claim of deliberate indifference has an objective element and a subjective element; the inmate plaintiff must prove that (1) "a substantial risk to the inmate's safety existed," and (2) the prison official "had knowledge of the substantial risk to the inmate's safety but nevertheless disregarded it." *Id.* (internal citations omitted).

To succeed on his conditions of confinement claim against Ault, Moeller, Gehle, Miller, Lohman, and Dohman, Brooks must prove that the exposed wire in the shower created a substantial risk of serious harm, and the prison officials were aware of, but disregarded, the risk. *Id.* "The subjective component requires that the official was both aware of facts from which the inference could be drawn that a substantial risk of serious harm existed, and he must also draw the inference." *Davis v. Oregon Cnty., Mo.*, 607 F.3d 543, 548 (8th Cir. 2010). "'[D]eliberate indifference includes something more than negligence but less than actual intent to harm; it requires proof of a reckless disregard of the known risk.'" *Reynolds*, 636 F.3d at 979 (quoting *Crow v. Montgomery*, 403 F.3d 598, 602 (8th Cir. 2005)).

Defendants do not dispute that on February 27, 2009, exposure of a live wire in the shower that Brooks used in Cellhouse 219 created a substantial risk of harm. The issue is whether the prison officials were aware of, yet disregarded, the substantial risk of serious harm created by the exposed live wire in the Cellhouse 219 shower. Defendants Moeller, Miller, Gehle, Dohman, and Lohman each provided an affidavit in support of the motion. On February 27, 2009, Moeller, the Unit Manager for Cellhouse 219, and Miller, a correctional officer

5

working in Cellhouse 219, were aware that the light fixtures in the showers had been removed; however, Moeller and Miller stated that they were unaware of any live wires in the showers, and believed the conditions in the showers were safe for the inmates. (Defs.' App., Ex. D at 1, Ex. F at 2.) Gehle stated he was unaware that removal of the light fixtures resulted in any live wires in the showers on February 27, 2009. (*Id.*, Ex. E at 1.) Dohman and Lohman are both Certified Electricians who worked for ISP on February 27, 2009. Due to loss of maintenance records, there is no record of who removed the light fixtures from the shower stalls on the fourth floor of Cellhouse 219 in February 2009. Dohman and Lohman both stated that they do not believe they removed the light fixtures, and they were unaware of any live wires in the showers after the fixtures had been removed. (*Id.*, Ex. G at 1, Ex. H at 1.) Defendants submitted evidence that no inmates had reported receiving an electrical shock in the showers prior to February 27, 2009; prison staff believed the showers were safe; and once the issue was reported, the showers on the fourth floor of Cellhouse 219 were closed until maintenance workers fixed the problem, and checked all the showers. In Defendants' Statement of Undisputed Material Facts (Clerk's No. 46), defendants state: "At no time prior to the February 27, 2009 incident did any of the Defendants know that there was an electrical problem or live wire in the shower stall on the fourth floor of Cellhouse 219." (Defs.' St. Und. Mat. Facts, at 2.) Brooks failed to respond to Defendants' statement of facts, and thereby admitted that Ault, Moeller, Gehle, Miller, Lohman, and Dohman did not have knowledge of an electrical problem or live wire in the Cellhouse 219 shower. LR 56.b; *see Solis v. Hill Country Farms, Inc.*, 808 F. Supp. 2d 1105, 1117-18 (S.D. Iowa 2011).

Brooks argues that the defendants knew, or should have known, that removing the light fixtures, and exposing the receptacle to water, created a substantial risk of serious harm to inmates using the shower. However, Brooks "must show that the officers had actual knowledge of a substantial risk of harm to [Brooks] and then disregarded that knowledge. A finding of negligence is insufficient, because 'deliberate indifference' involves a subjective standard of culpability." *Lambert v. City of Dumas*, 187 F.3d 931, 937 (8th Cir. 1999) ("[T]he 'knew or should have known' standard 'is nothing more than a common-law tort standard, and has no place in Eighth Amendment jurisprudence.'" (quoting *Randle v. Parker*, 48 F.3d 301, 304 (8th

6

Cir. 1995))). If someone at ISP was negligent for failing to ensure that there were no live wires in the showers, this negligence alone cannot support Brooks' Eighth Amendment conditions of confinement claim. *See Jones v. Minn. Dep't of Corr.*, 512 F.3d 478, 484 (8th Cir. 2008) ("'[A]n official's failure to alleviate a significant risk that he should have perceived but did not, while no cause for commendation, cannot under our cases be condemned as the infliction of punishment.'" (quoting *Farmer*, 511 U.S. at 838)).

Additionally, Brooks alleges that after he reported to Correctional Officer Miller that he had received an electrical shock in the shower, on February 27, 2009, she was disrespectful and uncaring towards him. This allegation does not establish a question of fact as to whether Miller recklessly disregarded a known risk of serious harm to Brooks caused by exposure of a live wire in the shower. Rudeness alone does not establish an Eighth Amendment violation. Brooks also does not allege any harm resulting to him due to Miller's attitude subsequent to his complaint about the condition in the shower.

Because there is no evidence that any of the defendants were aware of an electrical problem, specifically live wires, in the Cellhouse 219 shower prior to Brooks reporting the incident on February 27, 2009, summary judgment should be granted on Brooks' Eighth Amendment conditions of confinement claim against Ault, Moeller, Gehle, Miller, Lohman, and Dohman.

B.  Claim of Deliberate Indifference to a Serious Medical Need against Nurse Shelford

Brooks claims Nurse Shelford provided him inadequate medical care following the electrical shock, in violation of his Eighth Amendment rights. Specifically, in his Response, Brooks complains that Nurse Shelford failed to give him the pain relief medication Tramadol after it was prescribed for him by Dr. Sparks on March 2, 2009. In order for his claim against Nurse Shelford to succeed, Brooks must show that: (1) he had a serious medical need, and (2) Nurse Shelford was deliberately indifferent to his serious medical need. *McCaster v. Clausen,* 684 F.3d 740, 746 (8th Cir. 2012); *Estelle v. Gamble*, 429 U.S. 97, 104 (1976).

Nurse Shelford contends that, based upon her examination of Brooks, the February 27, 2009, incident did not cause him to suffer a serious medical need. A serious medical need exists if a physician has determined that medical treatment is necessary, or the condition is so obvious

even a lay person would recognize the necessity of medical treatment. *Christian v. Wagner,* 623 F.3d 608, 613 (8th Cir. 2010). Brooks claims that he received an electrical shock from an exposed wire while showering on February 27, 2009, causing him to fall to his knees, and hit his face and shoulder on the shower wall. "Receiving an electrical shock strong enough to throw one to the floor is a serious medical need that even a lay person would easily recognize commands a doctor's attention." *See McKinney v. Archey,* No. 1:08 CV 112 JM, 2008 U.S. Dist. LEXIS 63941, at *11 (N.D. Ind. Aug. 19, 2008). Brooks was suffering from a serious medical need on February 27, 2009, was treated, and received Tylenol. However, Brooks' complaint is not about the medical treatment he received on February 27, 2009.

Rather, Brooks complains that he did not receive the prescription medicine Tramadol for his pain on March 2, 2009, when a three-day supply of it was prescribed by Dr. Sparks. "When an inmate alleges that a delay in medical treatment constituted a constitutional deprivation, 'the objective seriousness of the deprivation should also be measured by reference to the effect of delay in treatment.'" *Coleman v. Rahija,* 114 F.3d 778, 784 (8th Cir. 1997) (quoting *Crowley v. Hedgepeth*, 109 F.3d 500, 502 (8th Cir. 1997)). "An inmate's failure to place verifying medical evidence in the record to establish the detrimental effect of delay in medical treatment precludes a claim of deliberate indifference to medical needs." *Id.* Brooks claims he suffered additional pain due to his delay in receipt of Tramadol, but he has not presented any verifying medical evidence that he suffered an adverse effect on his condition, or even additional pain, from the delay. Brooks, therefore, failed to show that he suffered a serious medical need by not promptly receiving Tramadol on March 2, 2009.

Further, Nurse Shelford's medical treatment of Brooks at any time following the electrical shock was not deliberately indifferent. Deliberate indifference requires proof that Nurse Shelford was more than merely negligent; Brooks "must show that [Nurse Shelford's] mental state was 'akin to criminal recklessness.'" *McCaster*, 684 F.3d at 746 (quoting *Gordon v. Frank,* 454 F.3d 858, 862 (8th Cir. 2006)). "Grossly incompetent or inadequate care can constitute deliberate indifference in violation of the Eighth Amendment where the treatment is so inappropriate as to evidence intentional maltreatment or a refusal to provide essential care." *Dulany v. Carnahan,* 132 F.3d 1234, 1240-41 (8th Cir. 1997). However, it has been consistently

held that a prisoner's disagreement over the prescribed treatment plan is not sufficient to rise to the level of a constitutional violation. *See Hines v. Anderson,* 547 F.3d 915, 921 (8th Cir. 2008).

Nurse Shelford examined Brooks on February 27, 2009, and March 2, 2009. On February 27, 2009, Nurse Shelford assessed Brooks' injuries; determined that he had not suffered any electrical burns; consulted with a physician; and recommended that he alternate ice and warm compresses on his right shoulder, take Tylenol for pain, and limit activity. On March 2, 2009, Nurse Shelford consulted with Dr. Sparks, and scheduled Brooks to see the physician the next day, March 3, 2009. Evidence in the record shows Dr. Sparks ordered Tramadol for Brooks on March 2, 2009, but nothing in the record indicates that Nurse Shelford was responsible for filling prescription orders or getting medication to inmates. Coleen Kascel, the Nursing Supervisor at ISP in Fort Madison, reviewed Brooks' medical records, and opined that the medical care Nurse Shelford provided Brooks was proper, appropriate, and timely. (Def.'s App., Ex. I at 21.) Assuming it was Nurse Shelford's responsibility to ensure Brooks received the medication ordered by Dr. Sparks on March 2, 2009, nothing in the record indicates that her failure to do so was "so inappropriate as to evidence intentional maltreatment or a refusal to provide essential care." *Dulany,* 132 F.3d at 1240-41.

In his Amended Complaint (Clerk's No. 4), Brooks also alleges that Nurse Shelford wrote false reports and did not document injuries he suffered to his face when he fell in the shower after receiving the electrical shock. Brooks did not address this allegation in his Response. There is no evidence in the record that the injuries to his face presented a serious medical need for any treatment beyond what he actually received, or that Nurse Shelford's failure to further document any injuries was done with deliberate indifference to Brooks' medical needs.

Because Nurse Shelford has shown that Brooks received immediate, continuing medical attention, and Brooks presented no evidence that Nurse Shelford acted with gross incompetence or reckless disregard for his medical needs, summary judgment should be granted on Brooks' claim of deliberate indifference to a serious medical need against Nurse Shelford.[2]

---

[2] Brooks' allegations against Dr. Sparks (erroneously made against Dr. Fillipelli) were that there was never an MRI taken at ISP, and Dr. Sparks checked Brooks for numbness in his

C. Request for Injunctive Relief

Brooks requested that all showers at ISP be repaired. "'In general, a pending claim for injunctive relief becomes moot when the challenged conduct ceases and there is no reasonable expectation that the wrong will be repeated.'" *Roubideaux v. N.D. Dep't of Corr. & Rehab.*, 570 F.3d 966, 976 (8th Cir. 2009) (quoting *Mo. Prot. & Advocacy Servs. v. Carnahan*, 499 F.3d 803, 811 (8th Cir. 2007)). An "inmate's claims for injunctive and declaratory relief to improve prison conditions are moot when he is transferred to another facility and is no longer subject to those conditions." *Davis v. Missouri*, 389 Fed. Appx. 579, 579 (8th Cir. 2010) (citing *Smith v. Hundley*, 190 F.3d 852, 855 (8th Cir. 1999)). Brooks' claim for injunctive relief is moot because the showers have been repaired, and Brooks was transferred to another facility.

IV. RECOMMENDATION AND ORDER

No genuine issues of material fact exist. Viewing the facts and inferences in the light most favorable to Brooks, the Court finds that there is insufficient evidence for a jury to reasonably find that Defendants acted with deliberate indifference to either a substantial risk of serious harm, or to a serious medical need; Brooks' Eighth Amendment rights were not violated.

IT IS RESPECTFULLY RECOMMENDED that Defendants' Motion for Summary Judgment (Clerk's No. 46) be **granted**, and Defendants Rich Tyler and Dr. Fillipelli be dismissed without prejudice for lack of service of process.

IT IS ORDERED that the parties have until October 5, 2012, to file written objections to this Report and Recommendation, pursuant to 28 U.S.C. § 636(b)(1), unless an extension of time for good cause is obtained. *Thompson v. Nix*, 897 F.2d 356, 357 (8th Cir. 1990); *Wade for Robinson v. Callahan,* 976 F. Supp. 1269, 1276 (E.D. Mo. 1997). The Court will freely grant such extensions. Any objections filed must identify the specific portions of the Report and Recommendation and relevant portions of the record to which the objections are made and must

---

legs, when he only complained of numbness in his shoulder. Based on review of the summary judgment record, Brooks received medical treatment from Dr. Sparks, and his allegations are merely a disagreement over the prescribed treatment plan. This is insufficient to rise to the level of a constitutional violation. *See Hines*, 547 F.3d at 921. Therefore, even if Dr. Sparks had been substituted for Dr. Fillipelli in an amended complaint, there was no Eighth Amendment violation relating to the treatment by the ISP physician following Brooks' electrical shock.

10

set forth the basis for such objections. *See* Fed. R. Civ. P. 72; *Thompson*, 897 F.2d at 357. Failure to timely file objections may constitute a waiver of a party's right to appeal questions of fact. *Thomas v. Arn,* 474 U.S. 140, 155 (1985); *Giffini v. Mitchell,* 31 F.3d 690, 692 (8th Cir. 1994); *Halpin v. Shalala,* 999 F.2d 342, 345 & n.1 (8th Cir. 1993); *Thompson,* 897 F.2d at 357.

The Final Pretrial Conference set for 9:30 a.m. on October 23, 2012, and Evidentiary Hearing set for 10:00 a.m. on November 1, 2012, are cancelled, and will be reset if necessary following a decision on this Report and Recommendation.

**IT IS SO ORDERED.**

Dated this 21st day of September, 2012.

_____
CELESTE F. BREMER
UNITED STATES MAGISTRATE JUDGE